**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1458
_____

DERRICK D. GILLIAM,
                                        Appellant

v.

STEPHEN E. CAVALLARO, Individually and in his Official Capacity;
NICHOLAS J. RUSSO, Individually and in his Official Capacity;
JACK MANNING, Individually and in his Official Capacity;
BOROUGH OF GLASSBORO; COUNTY OF GLOUCESTER;
RAYMOND D. GIORDANO, Individually and in his Official Capacity;
STATE OF NEW JERSEY

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-21-cv-16844)
District Judge:  Honorable Noel L. Hillman

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 9, 2023

Before:  AMBRO[*], KRAUSE, and SCIRICA, <u>Circuit Judges</u>

(Opinion filed: February 23, 2023)

_____

OPINION[**]
_____

[*] Judge Ambro assumed senior status on February 6, 2023
[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Derrick Gilliam appeals pro se from an order of the United States District Court for the District Court of New Jersey sua sponte dismissing his second amended complaint brought under 42 U.S.C. § 1983. For the following reasons, we will affirm in part, vacate in part, and remand to the District Court for further proceedings.

I.

Gilliam alleges in his second amended complaint that, on April 12, 2013, he struck a pedestrian with his vehicle, and the pedestrian later died from his injuries. On the scene, defendant Jack Manning, a police officer, smelled alcohol on Gilliam's breath and observed an open container of vodka in his vehicle. Another officer, defendant Stephen Cavallaro, overheard Gilliam tell bystanders that he had consumed one alcoholic drink. Defendant Raymond Giordano then transported Gilliam to police headquarters, where Gilliam refused to perform a field sobriety test. The officers did not administer a breathalyzer test. Cavallaro arrested Gilliam for obstruction of justice and transported him to a hospital to obtain a blood sample. Gilliam further alleges that he would not consent to a blood draw, and the officers did not attempt to obtain a search warrant to compel the same. Instead, Cavallaro told Gilliam that he was required to provide a blood sample, and that if he refused, they would use a reasonable degree of force to obtain the sample. When Gilliam expressed further hesitation due to his fear of needles, the officers allegedly warned him that they would hold him down and take his blood if he did not consent. Gilliam then consented and had his blood drawn.

2

Gilliam avers that he was subsequently released from custody, and on April 25, 2013, he was arrested in his home for first-degree reckless vehicular homicide.  In his state criminal proceedings, the trial court denied his motion to suppress his blood test results in 2017; Gilliam ultimately pleaded guilty to second-degree reckless vehicular homicide and was sentenced to a five-year prison term.  The obstruction charge was dismissed.  Gilliam alleges that in January 2021, the Appellate Division of the New Jersey Superior Court determined that the warrantless blood draw was an unreasonable search of his person, vacated his plea, and remanded for trial.  See State v. Gilliam, 2021 WL 79181, at *5-8 (N.J. Super. Ct. 2021) (per curiam).  Gilliam was released from the State's custody and is currently incarcerated in federal prison pursuant to an unrelated conviction.

On September 13, 2021, Gilliam filed a pro se complaint against the arresting officers, the Borough of Glassboro, and Gloucester County.  After Gilliam amended the complaint once, he requested leave to file a second amended complaint to add the State of New Jersey as a defendant and bring additional claims.  In addition to his original claims under 42 U.S.C. §§ 1983, 1985 relating to unreasonable search and seizure, excessive force, civil conspiracy, failure to train the officers, and intentional infliction of emotional distress, Gilliam sought to add constitutional claims for false arrest, malicious prosecution, abuse of procedural due process, and assault and battery.  The District Court granted leave to amend the complaint but, upon screening the second amended complaint pursuant to 28 U.S.C. § 1915A(a), dismissed his claims either as time barred or for failure to state a claim upon which relief could be granted.  Gilliam appealed.

3

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291 and we exercise plenary review over a District Court's sua sponte dismissal of a complaint pursuant to § 1915A. Dooley v. Wetzel, 957 F.3d 366, 373 (3d Cir. 2020). Under § 1915A, district courts must review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." See 28 U.S.C. § 1915A(a). If the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," the Court must dismiss it. See id. § 1915A(b)(1). As a pro se litigant, Gilliam is entitled to liberal construction of his complaint. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

## III.

First, Gilliam argues on appeal that the District Court erred in concluding that the State of New Jersey is immune from suit under the Eleventh Amendment because he is a citizen of the State of New Jersey. That contention is without merit. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) (stating that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state") (citation omitted).

Gilliam further argues that the District Court should not have dismissed his claims as time barred because he did not know that the officers lacked authority to compel a warrantless blood draw until his conviction was vacated in 2021. But the statute of limitations begins to run when a claimant is aware of the harm underlying his claims, not the illegality of the harm. See Estate of Lagano v. Bergen Cty. Prosecutor's Office, 769

4

F.3d 850, 861 (3d Cir. 2014).  As explained by the District Court, all of the time-barred claims arose from the blood draw or Gilliam's arrest, both of which occurred in 2013, and the two-year statute of limitations expired in 2015.  Further, even if Gilliam were entitled to equitable tolling insofar as he was unaware of the illegality of the blood draw because he was misled by the officers, his claims would nevertheless be time barred because he moved to suppress the blood draw results no later than October 2017, and was therefore aware of the potential illegality of the warrantless search over two years before he filed the instant action.  See Dique v. N.J. State Police, 603 F.3d 181, 185 (3d Cir. 2010).

Additionally, we find meritless Gilliam's contention that, pursuant to Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), his claims did not accrue until his conviction was vacated.  Accrual is deferred under Heck only where "at the time the § 1983 suit would normally accrue, there is an existing criminal conviction."  Dique, 603 F.3d at 187 (discussing Wallace v. Kato, 549 U.S. 384 (2007)).  Thus, Heck did not defer accrual of Gilliam's claims based on the warrantless blood draw and his arrest because these claims accrued in 2013 prior to his conviction.  See Smith v. Travelpiece, 31 F.4th 878, 888 (4th Cir. 2022) (rejecting argument that illegal search claims were subject to deferred accrual under Heck).

Regarding Gilliam's claims of a civil conspiracy to violate his right to equal protection, the District Court concluded that Gilliam did not allege facts from which it could be inferred that defendants were motivated by discriminatory animus against an identifiable class.  On appeal, Gilliam contends that the officers were racially motivated

5

because he was a black man who was suspected of killing a white man. Notwithstanding whether Gilliam sufficiently pleaded his conspiracy claims, we conclude that the District Court properly dismissed those claims because they were untimely. See Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 79 (3d Cir. 1989) (explaining that causes under §1983 and §1985(3) are subject to the same statute of limitations period). For civil conspiracy claims, the statute of limitations begins to run on "the date of each overt act causing damage to plaintiff," id. at 80, and all of the officers' acts detailed in the second amended complaint occurred in 2013 when Gilliam was arrested and his blood was drawn. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam) (explaining that this Court may affirm a district court's decision on any basis supported by the record).

We also construe Gilliam's brief as challenging the District Court's dismissal of his malicious prosecution claim. See ECF No. 18 at 3-B, 5. To state a malicious prosecution claim, Gilliam needed to allege that, inter alia, "the criminal proceeding ended in [his] favor." Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003). The District Court dismissed Gilliam's malicious prosecution claim against the officers primarily based on its conclusion that the criminal proceeding did not end in Gilliam's favor because the case was not "disposed of in a way that indicates the innocence of the accused." ECF No. 14 at 19, citing Kossler v. Crisanti, 564 F.3d 181, 187 (3d Cir. 2009). That interpretation of the "favorable termination" requirement, however, has subsequently been rejected by the Supreme Court, which held in Thompson v. Clark that favorable termination means only "that the criminal prosecution ended without a conviction." See 142 S. Ct. 1332, 1341 (2022). Because Gilliam alleges, and the state

6

court decision reflects, that his plea was vacated and his case was remanded for trial in 2021, sua sponte dismissal was not warranted absent a determination as to the status of the prosecution.

Additionally, the District Court stated that it found "no facts from which [it] could reasonably infer that Defendants acted maliciously or for a purpose other than bringing [Gilliam] to justice," as an alternative basis for dismissing the claim. ECF No. 14 at 20. It is not clear from that brief explanation, however, that the District Court applied a proper interpretation of "malice," which under New Jersey law means "the intentional doing of a wrongful act without just cause or excuse." See Brunson v. Affinity Fed. Credit Union, 972 A.2d 1112, 1120 (N.J. 2009); see also Lippay v. Christos, 996 F.2d 1490, 1503 (3d Cir. 1993) (looking to state law to interpret malice requirement). Proof of malice does not require proof that defendants acted with spite or ill will toward the plaintiff. See Epperson v. Wal-Mart Stores, Inc., 862 A.2d 1156, 1162 (N.J. Super. Ct. App. Div. 2004). In addition, lack of probable cause is relevant to, though not necessarily determinative of, the malice inquiry. See Lind v. Schmid, 337 A.2d. 365, 368 (N.J. 1975). Gilliam appears to allege that the officers caused his arrest by intentionally and wrongfully obtaining his blood sample without a warrant. And on appeal he claims that the officers' actions were racially motivated and taken in response to his voicing his belief of discriminatory treatment. Thus, we will also remand for further consideration of this issue.

Finally, Gilliam contends that the District Court improperly resolved the above issues during the screening stage, and that the court's rulings are indicative of its bias

against him.  As noted above, the District Court was entitled to screen the complaint and determine such issues because Gilliam sought redress from a governmental entity and officers of a governmental entity.  See 28 U.S.C. § 1915A(a); Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir. 2006) (explaining that a complaint may be dismissed sua sponte under § 1915 based on an affirmative defense where the defense is obvious from the face of the complaint).  Additionally, to the extent that Gilliam seeks the District Judge's recusal, "a party's displeasure with legal rulings does not form an adequate basis for recusal." Securacomm Consulting, Inc. v. Securacom Inc., 224 F.3d 273, 278 (3d Cir. 2000).  Gilliam's contention that the District Court's opinion reflects racial bias is without merit.

For the foregoing reasons, we will vacate the District Court's judgment in part, affirm in part, and remand for further proceedings consistent with this opinion.